## BENNETT vs. BUCHAN and others.

In September, 1861, the defendants, partners under the firm name of B. & Co., recovered a judgment for $1038.46 against D. and others composing the firm of D., G. & Co. On the 19th of March, 1863, after the dissolution of the latter firm, G., one of the partners therein, on paying ten per cent of the amount of the judgment, obtained from R., one of the firm of B. & Co., a release executed by him in the name of the firm of G.'s individual liability on the judgment, under the " act for the relief of partners and joint debtors," passed April 18, 1838, for which release he paid ten per cent of the whole amount of the judgment. On the 15th of February, 1866, the judgment was assigned to the plaintiff, by B., for the consideration of $100, by an instrument executed by him in the name of the firm of B. & Co., but without any authority therefor from B., or subsequent assent by him. The assignment contained a covenant "that there is now due on said judgment the sum of $1038.46 and interest from September 2, 1861, and that they (the assignors) will not collect or receive the same, nor any part thereof, nor release or discharge the said judgment." It appeared that G. the debtor so released, was solvent and able to pay the whole debt, but that the other judgment debtors were either dead or insolvent, except one, from whom the plaintiff had collected $102.16.

Held, 1. That the assignment was effectual to vest in the assignee all the interest and title of B. & Co. in the judgment, but that R., not having signed the same, was not liable on the covenants contained in it.

2. That the measure of damages in an action by the plaintiff as assignee, against B. for breach of the covenant, was ten per cent of the amount of the judgment, being $103.84, and interest, without applying in reduction thereof the amount collected by the plaintiff from one of the judgment debtors.

3. That the covenant, in the assignment, that the whole amount of the judgment was due, was not to be construed to mean that none of the judgment debtors had been released or discharged from it.

It is not necessary to the validity of a release or discharge of one of the co-partners of a dissolved firm from a debt or liability of the partnership, that he should have made actual payment of any part thereof to the creditor. It is enough that for any reason the creditor discharges or releases him in the terms required by the laws of 1838, ch. 257, and laws of 1845, ch. 348. It makes no difference with the rights or obligations of his associate debtors, whether he obtained the discharge with or without payment; unless such payment exceeds his proportionate part of the whole demand; for the act of 1838 makes him responsible over to his co-debtors, notwithstanding the discharge by the creditor, to the full amount of his proportionate share, less what he has paid to the creditor, if any thing, upon obtaining such discharge. Per FOSTER, J.

APPEAL by the defendants from a judgment entered upon the report of a referee.

The action was brought to recover damages alleged to have been sustained by the plaintiff, by the breach of a covenant of warranty made by the defendants on the sale and assignment to her of a judgment which they held against the firm of Dorans, Gillett & Co.

The defendants were copartners doing business in the city of New York, under the firm name of James Buchan & Co. On the 2d of Sept. 1861, they recovered a judgment for $1038.46 against Erasmus D. Doran, James E. Doran, Allen H. Gillett and Homer W. Wooster, composing the firm of Dorans, Gillett & Co., all of Syracuse, and the judgment was on that day docketed in the clerk's office of Onondaga county. On the 19th of March, 1863, and after the dissolution of the firm of Dorans, Gillett & Co., Gillett, one of the copartners, obtained from Buchan & Co. a release from his individual liability on the judgment, under the " act for the relief of partners and joint debtors," passed April 18, 1838, (*Laws of* 1838, *ch.* 257,) for which release he paid ten per cent of the whole amount of the judgment; and no more was ever paid to Buchan & Co. thereon. At the same time of the rendition of this judgment, eleven other judgments were rendered and docketed against the same defendants in favor of divers plaintiffs, for the sum, in all, including the said judgment, of $7366.52, and were all equal liens upon the real estate of said firm of Dorans, Gillett & Co., and upon the individual real estate of each of such defendants.

The release to Gillett was executed by Stephen Rich, in the name of the firm of James Buchan & Co., and was filed in the clerk's office of Onondaga county, at Syracuse, October 7th, 1865, but was entered in the docket of judgments under the letter G, only. Mr. Rich dissolved his connection with the firm on the 28th of January, 1865, leaving Buchan in possession of the business and assets.

And before that time, the firm, considering the judgment which they so held worth little, if any thing, charged it over to profit and loss.  Previous to August, 1865, James E. Doran, one of the said judgment debtors, died, and in that month Anna Doran, the mother of the two defendants Doran, died intestate, leaving real estate worth $2800, and leaving three living children, and the heirs of a fourth, her heirs at law.

On the 15th of February, 1866, John C. Bennett, of Syracuse, the husband of the plaintiff, who is the sister of the two Dorans, made an offer to James Buchan & Co., by letter, to pay $100 for an assignment of the judgment, describing it as a judgment against Erasmus E. Doran, in which he said, " I will give you $100 for the judgment. If you desire to accept my proposition, execute an assignment of the judgment in question to H. Amelia Bennett, and forward the same to me by express, C. O. D." This letter was answered on the part of Mr. Buchan, with a request to Mr. Bennett to procure and send to him a copy of the docket of the judgment, and Bennett went to the clerk's office and procured a copy and sent it to Buchan by mail.  The copy sent to Buchan was taken from the docket under the letter " D," and did not show that Gillett-had been released from the judgment.  Buchan thereupon executed the assignment to the plaintiff, in the firm name of James Buchan & Co., and sent it to Mr. Bennett, and received the payment of the $100 therefor.  The assignment contained a covenant, " that there is now due on the said judgment the sum of ten hundred and thirty-eight dollars and forty-six cents, and interest from September 2, 1861, and *that they will not collect or receive the same, nor any part thereof, nor release or discharge the said judgment.*" The referee found that the release of the judgment to Gillett was made in good faith, and that the assignment to the plaintiff was made in good faith, and without any intent to defraud any one, and without

Bennett *v.* Buchan.

thinking of the release previously made to Gillett, and that the same was executed by Buchan without any authority therefor from Rich, and was never assented to by him afterwards.

The referee also found as matter of fact, that the plaintiff, when she took the title to the judgment by assignment, was not aware that Gillett had been released.

Several other facts were found by the referee, but the only ones material to the questions here were, that Erasmus D. Doran was not solvent so that the judgment could be collected of him, but that Gillett was of sufficient ability, so that it could have been collected of him but for the release. The referee reported in favor of the plaintiff, for the full amount of the judgment and interest, less the sum of $102.16, this latter sum being the amount, with interest, of what the plaintiff, after taking the assignment, had succeeded in collecting by an execution, from E. D. Doran, leaving a balance of principal and interest of $1423.73, for which he ordered judgment in favor of the plaintiff. Judgment was entered thereon against Buchan, with costs, the complaint being dismissed as to Rich, and Buchan appealed.

*William J. Hough,* for the plaintiff.

*John M. Emerson,* for the defendants.

*By the Court,* FOSTER, J. The assignment of the judgment having been made after the dissolution of the copartnership of James Buchan & Co. by Mr. Buchan alone, and without the special authority or assent of Rich, it is contended that in any event, only the title of Buchan to the amount of one half thereof passed to the plaintiff; and that, therefore, no recovery can be had for more than one half of it, less the one half of what the plaintiff has already realized thereon.

The authorities cited to support the proposition fail to do so, (*Sanford* v. *Mickles*, 4 *John.* 224, &c., and *Geortner* v. *Trustees*, 2 *Barb. S. C. R.* 625,) and only enunciate the principle, that after the dissolution of a copartnership, one of the partners cannot dispose of the partnership choses in action without the authority or assent of the other, so as to make him liable upon any covenants or obligations which he assumes on such transfer.

In *Sanford* v. *Mickles*, the transfer by one of the partners was of a negotiable note, which was payable to order, and was indorsed with the firm name by the partner who transferred it, and all that the court held, was, that he could not create by such indorsement any liability against his late copartner.

It is true that the court, Yates, J., said, "it is impossible to separate the right to indorse a bill by one passing the title, from the legal responsibility on all those having an interest in it," and that one could not transfer the note; but I think there is no doubt that he could, by an indorsement of the note in the firm name without recourse, transfer the title thereto to the full extent that he could have done in respect of any other of the partnership property. And although the language of the court is more general and broader than the case called for, the decision was only that the other copartners were not liable as indorsers of the note. And in *Geortner* v. *Trustees*, while one of the head notes states the rule to be that "after the dissolution of a partnership, all the partners must unite in a transfer of a partnership security, in order to vest the title in the transferee," it will be seen by an examination of the case, that the court only decided that one partner cannot so transfer it, for his own private purposes, other than the settlement of and for the benefit of the copartnership.

One copartner, after the dissolution of the firm, may release a debt, and it will be binding on all the late firm.

(*Pierson* v. *Hooker*, 3 *John.* 68.) He may assign a bond belonging to the firm after the partnership is dissolved. (*Collyer on Part.* § 546.) He may lawfully assign a demand due to the partnership, after its dissolution, (*Milliken* v. *Loring*, 37 *Me. Rep.* 408,) and if there be no agreement to the contrary, such partner is presumed to have authority to dispose of the partnership *property*, to collect, adjust and pay debts, and give proper acquittances; but to have no power to increase or change the prior obligations of the partners. (*Van Keuren* v. *Parmelee*, 2 *N. Y. Rep.* [*Comst.*] 525, 526.)

It must be conceded that if Buchan is liable at all on the covenant contained in the assignment, he is at least liable to the amount of the one tenth of the judgment which was paid thereon when the release of Gillett was obtained; for he covenanted expressly that the whole amount of the judgment remained unpaid, and being liable to that extent, at least, he cannot claim that the amount collected upon the judgment by the plaintiff should apply for his benefit and in discharge of his obligation for that amount. He transferred the whole judgment, and having covenanted that the whole was due, the plaintiff has the right to apply the amount she collected on the residue of the judgment, and hold him responsible upon the broken covenant to the full extent of the damage occasioned by the breach.

A more serious question is, whether the appellant was liable for the whole amount found by the referee.

It must be conceded, upon the findings of the referee, that there was no fraud on the part of Buchan; that he was not aware, at the time when he executed the assignment, of the release of Gillett from the debt, and that he acted upon the transcript of the docket, which was procured and sent to him by the agent of the plaintiff; and if he is liable for the residue of the judgment, it must be because, independent of the covenant or guaranty, the

law casts such implied obligation upon him, or because of the terms of the covenant which he executed.

If the terms of the assignment had been general, stating the amount thereof, and containing no covenants, I think the law would imply a warranty that the whole amount so expressed was due, and that it was due from all the parties against whom it was rendered, if their names were included in the assignment. (*Furniss* v. *Ferguson*, 34 *N. Y. Rep.* 485.) But the counsel for the plaintiff does not claim on the argument before us, that that rule applies to this case, and I think it does not, because of the express covenants contained in the assignment. The right, therefore, must depend upon the language of the covenant itself. The parties have made their agreement in writing, and it contains the whole agreement. It cannot be added to by implication, but must be construed by its terms.

The language of the covenant is, "that there is now due on the said judgment the sum of ten hundred and thirty-eight dollars and forty-six cents, and interest from September 2d, 1861, and that they will not collect or receive the same, nor any part thereof, nor release or discharge the said judgment." The counsel for the plaintiff says that this language should be construed the same as if it read, and that they *had not collected or received,* &c., and "had not released or discharged the same, or *any of the defendants therefrom.*" This proposition is correct, so far as it requires the covenant to be understood as if it read that they had not collected or received any part of it, because that is the clear construction from the language of it, which states that the whole amount is now due. For it could not be all due if any portion of it had been paid by one or more of the judgment debtors. So, too, the counsel is correct in claiming that it is the same as if it read that the assignors had not released or discharged any portion of the amount of the judgment, for such is the legal reading of the instrument as it is; for if any portion

Bennett *v.* Buchan.

of the amount was discharged, the whole amount could not be due. But the real question is, whether the covenant can be construed, as such, to mean that *none of the debtors had* been released or discharged from it.

It is not necessary to the validity of a release or discharge of one of the copartners of a dissolved firm from a debt or liability of the partnership, that he should have made actual payment of any part thereof to the creditor. It is enough that for any reason the creditor discharges or releases him in the terms required by the laws of 1838, chap. 257, and laws of 1845, chap. 348; and it makes no difference with the rights or obligations of his associate debtors, whether he obtains the discharge with or without payment, unless such payment exceeds his proportionate part of the whole demand; for the act of 1838 makes him responsible over to his co-debtors, notwithstanding his discharge by the creditor, to the full amount of his proportionate share, less what he has paid to the creditor, if any thing, upon obtaining such discharge.

The judgment might be in force to the full amount against the other debtors, notwithstanding Gillett had been released. And, therefore, the mere fact of his release if he had paid nothing, would not have lessened the amount of the judgment. It might all be due, according to the language of Buchan's covenant. And if nothing had been paid by Gillett, his discharge would not have been a breach of the express terms of it. Now the covenant being in writing, I think if the plaintiff would claim that it should now be read, that none of the judgment debtors were discharged, he should have had it drawn so as to read so when it was executed. The equity of the plaintiff is very weak, upon all the facts of the case, and we should not strain the construction in her favor to enable her to make a large speculation out of one who, upon the proofs of the case, acted honestly and fairly in the transaction. It is enough, I think, that he be held re-

sponsible for what, by the terms of the assignment, he assumed; and that will make the plaintiff entirely whole, and leave a large judgment in her hands to be collected of those of the defendants therein who have not been charged.

If, however, I am wrong in my conclusions on this branch of the case, then I think the rule of damages applied by the referee is the correct one.

But I think that all the plaintiff is entitled to recover is the one tenth of the judgment, being $103.84, and interest thereon from September 2, 1861. And unless the plaintiff elects to reduce her damages to that amount, without costs of appeal to either party, then the judgment must be reversed and a new trial ordered, against Buchan, with costs to abide the event, with the order of reference vacated.

The case also presents pretty strong ground for a new trial, as being upon a report against the weight of evidence. Certainly, upon the evidence returned to us, I should not have hesitated to believe that Bennett, while he was the agent of the plaintiff, and negotiating the purchase of the judgment, did in fact have full information that Gillett had been discharged from the judgment; and when we remember that the discharge was entered on the docket against the name of Gillett, and that Bennett himself had access to the book of dockets, and actually procured the transcript upon which the assignment was predicated, it seems to me that he was guilty of gross negligence, in not looking under the letter G, as well as that of D. But I have some doubts whether it is our duty to set aside the report on that ground, and am therefore for disposing of the case upon the grounds previously stated.

Judgment accordingly.

[ONONDAGA GENERAL TERM, October 6, 1868. *Foster, Mullin* and *Morgan,* Justices.]